Good morning, Your Honors. I would like to reserve two minutes for a rebuttal. In this case, the convictions that were the sole basis for Petitioner's removal order have been vacated. The primary issue remaining in this case is whether the BIA erred in denying Mr. Chabin's motions to reopen. Both grounds stated by the BIA in denying the motions to reopen have since been rejected subsequently by the Ninth Circuit. And so Petitioner seeks a ruling that is consistent with those Ninth Circuit decisions. And then those reasons have been rejected by the BIA, so where are we left? The BIA last week, if you received their letter, indicated that they have decided in Emandrez that they do not agree with the Ninth Circuit. The Ninth Circuit, however, is not bound to follow the BIA's opinion in that case. First of all, the Ninth Circuit has a long line of precedent, including Lena Renoso. But if we send it back to the BIA and then the BIA says, we have decided we aren't going to accept this, do we have an endless loop where this case is bounced back and forth like a yo-yo? Your Honor, if this is remanded with instructions to reopen, then that certainly helps preclude that possibility. And as far as the Ninth Circuit precedent goes, it's clear that the Ninth Circuit has interpreted this text of this regulation to be to say what it says. It says in very plain language that jurisdiction of the BIA exists if the alien in question is not in removal proceedings. Counsel, I'll let the government speak for itself in just a minute, but as I read the government's brief, they conceded that this has to be remanded to the BIA. Is there something else we're supposed to do? So as a bit of history, Your Honor, the government has previously moved to remand, asked for a simple remand on two occasions, and the Ninth Circuit has twice rejected that. What we are asking for is a remand with instructions because Mr. Chabon has had this proceeding since 2004. Another set of endless delay would be unwarranted in this case. A remand with instructions to what? A remand with instructions to reopen, Your Honor. Now – And is the BIA going to reopen it when they have said they won't reopen it? I mean, when they've said they will not follow the Ninth Circuit precedent. The BIA certainly has said that. Interesting. I mean, here I am in the Third Circuit, so I'm sort of sitting to the side watching this go on, but it seems we've got the BIA and the Ninth Circuit at loggerheads right now. There certainly is this conflict that has been set up by this Emmandrez decision. I will note, however, that in the National Telecoms case, the Brand X case that they rely on, the government very much says that where the expertise of the agency is – I'm sorry, Brand X indicates that where the expertise of the agency is entailed, then necessarily the BIA would have to weigh in on that. This is not such a case because the regulatory language is clear, as held by then Emmandrez of Cisneros. May I ask a question on a slightly different subject? As I read the record, your position is that the regulations, I think it's 8 CFR 1003.23, do not allow – do not bar reopening if the person is not in removal proceedings. Yes, Your Honor. But your person was in removal proceedings. As I read the record, on August 12, 2003, the service, I guess, ICE, moved to reinstate his 1999 removal order. That was a month before – not quite, maybe three weeks before – your petitioner filed his motion to reopen. So at that time, he was in removal proceedings, was he not? I don't think that's the correct characterization, Your Honor, because the reinstatement had already occurred by that time. So he was not in removal proceedings at that time. The analogy would be if he were in front of the immigration judge and – The reinstatement of what? The reinstatement of his removal proceedings had taken place. That's correct, Your Honor. So he was in removal proceedings. The reinstatement had been – the removal order had been reinstated. He was no longer in proceedings to determine whether he was subject to removal. But they hadn't removed him yet. Is removal proceedings only until he's ordered removed or until he is removed? It is while the removal is being decided, and so the analogy – Do you have a case that tells me that removal proceedings stops short of removal? I do not, Your Honor, but the government has not argued that position. And the analogy with the – Maybe you'll take a note. The government – the analogy with the immigration judge is that if there is a removal order and if there are removal proceedings, for instance, you get your charge of removability as an alien and then you depart from the United States, that is a clear instance where your removal proceedings are still happening. And certainly in Lynn and Renoso, the aliens in those cases, under my understanding, have not yet been removed. Now, in Lynn and the other Ninth Circuit case, there really wasn't a Chevron analysis done, was there? A Chevron analysis? Yeah. Of the BIA's position on whether a motion for reopening would even be considered. Your Honor, in the briefing for the Lynn and Renoso case, the government certainly raised the Chevron deference. The court, in its opinions, did not directly address that. And certainly the textual reason for that is because the regulation, in plain meaning, was unambiguous. It says if the alien is in removal proceedings. Now, the court, even under Brand X, certainly has the prerogative to overturn the BIA's current position by finding the text of the regulation to be unambiguous, consistent with what the Lynn and Renoso Cisneros courts have held. And furthermore, the BIA's practices do not change the fact that the regulation says what it says. Armandura's opinion goes into several pages at length about pulling out some cases from their history that seem to suggest that they've had a certain practice. But the fact is that the regulation textually says what it says, and it forecloses the BIA's position. How do you get around the 90-day cutoff rule? The 90-day carve-out rule? Yeah. I mean, you can't make a motion to reopen after 90 days. Isn't that right? I believe in this instance the motion to reopen was under a prior immigration statute, but I don't know, Your Honor. No, no. I have this in mind. He was removed in 2000 to Lebanon. That's correct. If he had a motion to reopen his prior proceedings, he had to do so in 90 days. He didn't do that. Well, my understanding of the provisions that allow reopening is that it allows for new facts that may arise after that 90-day period. I see that my time is up, and I would like to reserve the remaining time for rebuttal, if I may. Okay. Welcome back. You have double duty this week. Yes, I do. Good morning. It pleases the Court. My name is Cindy Ferrier, and I'll be representing the government in this case. This case is obviously uniquely in a unique procedural posture, and it involves some complex issues, but they all come back to Petitioner's challenge to his lawfully executed removal order, and that has been reinstated, and that's not subject to being attacked. A brief chronology might help set out the facts a little bit here. Petitioner was convicted in 1988 and 1992, and based upon those convictions, which were charged as aggravated felonies, he was ordered removed in July of 1999. After his removal order, he was held in INS custody, taken to a hospital, escaped from custody, came back once he was located and found. Then he was removed to Lebanon in June of 19 or, I'm sorry, in June of 2000. At that point, those proceedings were complete. He illegally reentered the United States in August of 2000, and he lived freely here for three years until he was detected by the local police force and referred to INS. At that point, in August of 2003, his removal order, his 1999 removal order, was reinstated under 241A5. He filed a motion to reopen with the immigration judge in 2003, and the immigration judge denied that, noting that he could assert his. He filed his motion to reopen the removal proceedings, which terminated in 1999 and 2003. Correct. It wasn't a motion to reopen the reinstatement of his removal, which was put in effect in 2003. At no point has Petitioner challenged the actual procedures related to reinstatement. He's challenging. He's getting back to the underlying order. Although it is true that in 2003, he was he wanted to assert his fear of persecution from being returned to Lebanon, and through and I.J. denied that motion, noting that he could do that through the reinstatement process. And ultimately, he was granted withholding of removal and faces no threat of being returned to Lebanon while he has a fear. But if he takes a trip to Mexico, he'll never come back in the States. I am not certain, actually, with withholding of removal, what status that would accord him as far as if he wants to travel abroad. I believe that he could request permission from DHS to travel abroad because he does have a certain, a limited status here within the United States. He can be removed to a country other than Lebanon. He could be. That is true. But you say that there's no danger of him being removed at this time. No danger of him being removed to Lebanon or to a country where he could show that he has a well-founded fear of persecution. So it is a limited status that he has. It's true he's not accorded the lawful permanent residence status that he had prior to his removal. But to make clear, he had the opportunity to have challenged that deportation order in 1999 prior to his removal. He had approximately a year here, and he did not do so. He waived appeal. That order, at the time that it was executed, was lawfully executed. And this Court has made quite clear in Morales-Escuero and a more recent, in several more recent decisions, Garcia de Rincon and Martinez-Montero, that the underlying deportation order that has been reinstated cannot be collaterally attacked. And so for that reason, the government no longer believes that remand is necessary, that, in fact, the Court can simply deny this petition for review because the attack on the underlying order is not authorized per se. So in your brief, you told us that you thought that remand was required. I believed that it was, at the time, based upon the fact that the Board's application of its departure bar regulations was inappropriate due to subsequent Ninth Circuit case law in Lynn and Reynoso's murals, and also due to the burden of proof analysis. Okay. So what's changed since the time you filed your brief? What's changed is the Board's decision in Armendariz, which makes clear that, as Judge Roth was pointing out, if it was remanded to the Board at this point, they believe that their departure bar regulations are appropriate and should be effective even within the Ninth Circuit. So I believe to remand it for that purpose ---- Okay. Now, we do have sort of a never-ending loop problem, don't we? You have a non-acquiescence policy in the BIA? Non-acquiescence? I'm not sure. That you're not going to acquiesce in the Ninth Circuit's decision? That's what the Board's new decision says, which was issued last year. How can this panel do that without overruling Lynn and Reynoso? Well, this ---- We have to do what we have to do. The Board may do what it has to do, and then we're just going to be up at loggerheads until you either get Supreme Court review or get en banc review. It would have to be a much further in-depth analysis, and we would most likely argue Brand X principles apply here. But, again, I don't think that the Court needs to deal with the departure bar regulations at this point. And Lynn and Reynoso Cisneros are distinguishable from this case. In Lynn and in Reynoso, there was not a reinstated order of removal. The order had not been reinstated. So it was said. So in those cases, the Court specifically noted, at least within Lynn, that it didn't have a jurisdictional bar or a, you know, a bar to its examining the review under the reinstatement statute. This case, there is such a bar. Have you given some consideration to my earlier question to Mr. Ma regarding the fact that at the time that the reinstatement was sought in 2003, in September 2003, or rather at the time he saw his petition, the 1999 removal order had been reinstated, so he was in removal proceedings? Or do you agree with Mr. Ma that he's not in removal proceedings because the reinstatement enters his removal order, so therefore proceedings have ended? Yes. For purposes of as far as challenging his removability, once they reinstated that prior removal order, it was effective, and that was done. Now, he was able to still raise his claims of fear of persecution, but that was So the government is conceding that he was in he was not in removal proceedings in September 5th, 2003, when he filed his petition? He was not in removal proceedings pursuant to 8 U.S.C. 1229A. His order had, in fact, been reinstated through the statute at 8 U.S.C., I believe it's 1231A5. But I think that Morales Esquerdo explains the process a little bit, and it explains as far as the reinstatement order, what happens to that prior order, basically. It's just a reinstatement of that previous order. Now, as I mentioned, the Petitioner's case is distinguishable from Lynn and Reynoso, so the Court, I believe, can get around. It doesn't need to worry about its prior precedent in the case affecting this particular decision. If an alien were to — and I should also make clear that his challenges to his convictions and his actual vacate of his convictions did not come until well after he had reentered and been illegally present in the country for three years. And we believe that that distinguishes this case from other cases where there has been collateral attacks that maybe have been successful on reinstated or on prior orders of removal. This case, again, Petitioner came in, he hid out, essentially, for three years until he — until he was caught and then challenged all of his prior — or challenged his prior convictions. Why should that make a difference? And that makes a difference because under this Court's case law, there have been — collateral attacks have been entertained to a certain extent. If an alien has potentially vacated his proceeding or vacated his prior conviction if he remained outside the country prior to his reentry, if he sought vacator of those convictions while he was still in proceedings, in this case, he simply didn't do that until well after his removal in the case. So I believe, you know, Petitioner raises a number of due process concerns. I'm sorry. What year did he get the vacature in California? I'm sorry? What year did he get the vacature of his convictions? They were both in — one was in November of 2003, November 19th, 2003, and the other was in December of 2003. Okay. So this is after he reenters the country. After he reentered the country and — And after he's in removal proceedings for — again. Yeah, after his prior order had been reinstated. So he doesn't get his vacating of his criminal prosecutions until he is, again, in the clutches of the Immigration Service. Correct. And again, Petitioner's request — I'm sorry. I realize the amount of time. But Petitioner's request that the Court remand the case with instructions to reopen essentially would be ordering the Board to reopen the 1999 proceedings. And under this Court's case law, regarding reinstatement orders and, again, also avaringa villalobos, which makes clear that you cannot collaterally attack an underlying order that was properly executed at the time, this Court should not do such. Instead, should simply deny the petition for review. Thank you. Mr. Ma, we'll give you a minute. Thank you, Your Honor. We need to remember at its core that this is about the very basis, the convictions having been vacated, the very basis for the removal order. And there are several cases, such as Cardoso-Tlaiseca and Nass, which clearly indicate that the nullification of convictions is reason to revisit the removal orders. With respect to non-acquiescence, Your Honor, the Ninth Circuit is bound to follow the previous panel's decisions in Linn and Ranoso, unless there is some intervening higher authority, as indicated. Did Linn and Ranoso involve petitioners whose removal had been reinstated? Those particular cases, it was not clear in Ranoso in Linn it had not been reinstated. There are several subsequent Ninth Circuit decisions, mostly unpublished, in which there were reinstatements. And I'd like to address those. Are those in your brief?  But there is a practice in the Ninth Circuit, at least, of applying that rule to those sorts of cases. With respect to the underlying removal order, I would just like to mention also that there are constitutional deficiencies that a petitioner has raised as to the legal basis and effectiveness of that removal order, based on the ineffective assistance of counsel and the conduct of the immigration judge during the removal proceedings. And so as an alternative basis, I would certainly vitiate the 1999 removal order. If the court then chooses to remand, then that would basically be having the BIA have to revisit the basis for the removal order. He didn't appeal that before he was removed in 2000 to the BIA. He didn't appeal either the prejudgment claim or the IAC and ineffective assistance of counsel claim. Is that a part of that? That's correct, Your Honor, because the immigration judge basically indicated orally on the record that there was no relief available, and that combined with the fact that the attorney was ineffective led to the loss. There are many times a trial judge says that he's been quite right and there's no reason to appeal his order, but that doesn't excuse a person from having to exhaust his remedies by appeal. Part of there are two responses to that. First of all, Your Honor, the ineffective assistance of counsel certainly plays into that in terms of the decision to waive the appeal. The appeal was waived by his attorney. Furthermore, where it would be futile in light of the agency's position to appeal, then exhaustion has been excused. So in this particular instance where the agency has clearly indicated on the record that there is no relief available, exhaustion should not be required. So the petitioner would simply ask that his case be remanded to the BIA with instructions to reopen. Okay. Thank you. I appreciate the argument of both counsel.
judges: Bybee, Bea, Roth